**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **DENNIS BRUCE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-cv-03325-MHC-AJB** |
| **HOMEWARD RESIDENTIAL,** | : | |
| **INC.,** *formerly known as* | : | |
| **American Home Mortgage** | : | |
| **Servicing, Inc.,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S
<u>NON-FINAL REPORT AND RECOMMENDATION</u>**

Currently before the Court is Defendant's motion to dismiss. [Doc. 9]. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's motion be **GRANTED IN PART and DENIED IN PART**.

**I.     Background**

**A.     Procedural History**

Plaintiff Dennis Bruce originally filed this action on January 7, 2014 in the State Court of Fulton County, Georgia, against Defendant Homeward Residential Inc., and which Defendant subsequently removed to this Court. *See Bruce v. Homeward Residential, Inc.*, No. 1:14-cv-00435-TWT (hereinafter "*Bruce I*"); [Doc. 7 at ¶ 2].

AO 72A
(Rev.8/8
2)

Plaintiff voluntarily dismissed that action on March 10, 2014.  *See* Doc. 6 & Dkt. entries dated 3/10/14 in *Bruce I*; [*see also* Doc. 7 at ¶ 2].  On September 8, 2014, Plaintiff reinitiated this action in the State Court of Fulton County, which Defendant subsequently removed to this Court on October 15, 2014.  [Doc. 1; Doc. 1-1 at 5; Doc. 7 at ¶ 2].  On October 21, 2014, Defendant filed a motion to dismiss.  [Doc. 2].  On November 4, 2014, Plaintiff filed an Amended Complaint.  [Doc. 7].  Defendant then filed the pending motion to dismiss on November 20, 2014.[1]  [Doc. 9].  Plaintiff filed a response on December 10, 2014, and Defendant filed its reply on December 23, 2014.  With briefing complete, the Court discusses the pending motion.

**B.    Facts**

In considering a motion to dismiss, the Court accepts the facts alleged in the complaint as true, and construes them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012); *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004).  Accordingly, the facts are as follows:

---

[1]    Because Plaintiff filed an amended complaint, the first motion to dismiss was denied as moot.  [Doc. 16].

2

Plaintiff obtained a loan to purchase a residential property, and that loan was serviced by Defendant's predecessor until March 31, 2012. [Doc. 7 at ¶ 5]. In March 2012, Plaintiff was given notice that the loan servicing duties were assigned and transferred to Defendant and that Plaintiff should make all future payments for the loan to Defendant. [*Id*. at ¶ 6]. Although Plaintiff did not receive an account statement from Defendant in April or May 2012, Plaintiff called Defendant in the respective months to make those payments over the phone.[2] [*Id*. at ¶¶ 7-8]. Both payments were accepted by Defendant and debited from Plaintiff's bank account. [*Id*.]. Soon thereafter, Defendant began sending notices to Plaintiff that he was in default for failure to make payments when due and that the escrow balance on his account was short, even though Plaintiff made all payments timely. [*Id*. at ¶ 9]. On June 19, 2012, Plaintiff sent Defendant a letter along with supporting documentation showing that Plaintiff had made all payments timely and that Defendant had erred. [*Id*. at ¶ 11]. On July 18, Defendant replied that their review of Plaintiff's account did not show a payment in April 2012 and required more information from Plaintiff. [*Id*. at ¶ 12]. Defendant then began reporting that Plaintiff's "nonpayment" and "late payments" to the four major

---

[2]     Although the Amended Complaint states that Plaintiff did not receive a statement from Defendant in April 2013, the Court believes this to be a typographical error based on the remaining timeline of facts.

credit bureaus, Equifax, Experian, Trans Union, and Innovis. [*Id*. at ¶ 13]. Soon after, Plaintiff disputed the delinquencies reported by Defendant with the credit bureaus and Defendant received notice from the bureaus of the dispute. [*Id*. at ¶ 14]. Defendant then ceased reporting Plaintiff's alleged delinquencies. [*Id*. at ¶ 15]. However, some time later, Defendant resumed reporting the disputed information to the credit bureaus. [*Id*. at ¶ 16].

In 2012, Plaintiff was in the process of remodeling his home and relied heavily on credit to complete the project in order to put his home on the market in Spring 2013. [*Id*. at ¶ 18]. On December 29, 2012, in attempting to purchase materials for remodeling his home, Defendant went to Home Depot and discovered that his Home Depot credit card had been declined due to a reduction in the credit line. [*Id*. at ¶ 19]. In January 2013, Home Depot stated that the reasons for the reduced credit line was "number of accounts with delinquency," "ratio of revolving balances to credit limits too high," "delinquency date too recent or unknown," and "too many inquires in the last 12 months." [*Id*. at ¶ 20]. Plaintiff then discovered that Defendant was again publishing the false information and was denying receipt of the April payment. [*Id*. at ¶ 21]. At the time Home Depot reduced Plaintiff's credit line, there were no other delinquencies on Plaintiff's credit report. [*Id*. at ¶ 22].

4

On January 13, 2013, Plaintiff sent another letter to Defendant notifying it of the false reporting and Defendant's error.   [*Id.* at ¶ 24].   Plaintiff also disputed the information again with the credit bureaus. [*See id.* at ¶ 14 (citing [Doc. 7-2]).  However, Defendant continued to report the false information to at least one credit bureau up until August 2013.  [*Id.* at ¶ 33].  Plaintiff's credit line was subsequently reduced by multiple creditors, including Chase Bank, USA and Wells Fargo, in a domino effect as a result of the increased debt-to-available-credit ratio caused by the initial reduction by Home Depot.  [*Id.* at ¶¶ 26-28].

Plaintiff never received a full and acceptable accounting of his account from Defendant and as a result of the misapplication of the April payment, Plaintiff was charged late fees and other miscellaneous fees that have not been credited back to Plaintiff.  [*Id.* at ¶¶ 34-35].  Plaintiff was also charged for "forced placed" hazard insurance as a result of the misapplication of the payment and misstatement regarding the escrow balance.  [*Id.* at ¶ 36].  Plaintiff has been unable to restore his credit lines to their original levels or reduce the interest rate to the rates he enjoyed prior to Defendant's false reporting.  [*Id.* at ¶ 37].

5

## II.   Legal Standard

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that all allegations in the complaint are to be taken to be true even if doubtful in fact). However, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).  Additionally, the Court is not required to accept Plaintiff's legal conclusions. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012) (citing *Iqbal*, 556 U.S. at 678).  Nor will the Court "accept as true a legal conclusion couched as a factual allegation." *See Twombly*, 550 U.S. at 555.

A court will grant a Rule 12(b)(6) motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Under Rule 8 of the Federal Rules of Civil Procedure, a pleading states a claim when it contains,

6

*inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2).  To determine whether a complaint fails to state a claim, the Court must apply the standard announced by the Supreme Court in *Twombly*, 550 U.S. 544 (2007), described as follows:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

AO 72A
(Rev.8/8
2)

*Iqbal*, 556 U.S. at 678-79 (alterations, citations, and internal quotation marks omitted).

## III.    Discussion

Plaintiff's Amended Complaint asserts claims for breach of contract (Count I), negligence (Count II), defamation of character and defamation of credit (Count III), violations of the Fair Credit Reporting Act ("FCRA") (Count IV), and attorney's fees (Count V).  [Doc. 7, *passim*].  Defendant seeks to dismiss the Amended Complaint on the grounds that Plaintiff's state law claims are preempted by the FCRA, Plaintiff's FCRA claim fails as a matter of law because the claim is barred by the statute of limitations and Plaintiff has not sufficiently stated a claim under the FCRA, nor has Plaintiff stated a claim under each of the state law claims.  [Doc. 9-1, passim].  As this matter was removed on the basis of federal question jurisdiction, the Court begins its analysis with the FCRA claim, as it is the only claim that provides a basis for federal question jurisdiction.

### A.    FCRA

The FCRA, 15 U.S.C. § 1681 *et seq.*, was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681).  It provides that a plaintiff must bring an action "not later than the

AO 72A
(Rev.8/8
2)

earlier of: 1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or 2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

Defendant argues that, according to the Amended Complaint, Plaintiff became aware of the credit reporting issues by June 19, 2012. [Doc. 9-1 at 10]. Accordingly, Defendant argues that Plaintiff's claim must have been filed no later than June 19, 2014. [*Id.*].

In response, Plaintiff contends that, as stated in the Amended Complaint, [Doc. 7 at ¶ 2], since he originally filed his claims on January 7, 2014, voluntarily dismissed them, and then re-filed within six months of the dismissal, he has availed himself of the renewal of the statute of limitations pursuant to O.C.G.A. § 9-2-61. [Doc. 14 at 10]. Thus, he submits, the limitations period had not yet expired when he re-filed his claim. [*Id.*].

In its reply, Defendant argues that Georgia's renewal statute does not apply because the initial filing did not include an FCRA claim and that the first time Plaintiff made a claim under the FCRA was in the Amended Complaint filed on November 4, 2014. [Doc. 15 at 4-5]. Moreover, Defendant contends that the renewal statute does not apply to federal causes of action. [*Id.* at 5 (citing *Phillips v. United States*,

9

260 F.3d 1316, 1318 (11th Cir. 2001); *Ingmire v. Target Corp.*, 520 Fed. Appx. 832, 833 (11th Cir. May 29, 2013)].

First, the Court agrees with Defendant that Georgia's renewal statute does not apply to federal causes of action where Congress expressly set a limitations period, as to do so would be to undermine the uniform application intended by Congress to apply to specified causes of action. *Phillips*, 260 F.3d at 1318; *accord Ingmire*, 520 Fed. Appx. at 833; *Weldon v. Elec. Data Sys. Corp.*, 138 Fed. Appx. 136, 138 (11th Cir. May 4, 2005). Accordingly, the Court need not consider at this juncture whether the renewal statute applied to the initial January 2014 complaint.

Second, the parties are both incorrect as to when the cause(s) of action began to accrue. While the parties appear to rightfully agree that the two-year statute of limitation applies, § 1681p states that the two years does not begin to run until plaintiff's discovery of *"the violation that is the basis for such liability."* 15 U.S.C. § 1681p(1) (emphasis added). That requires the Court to jump ahead to the merits of Plaintiff's FCRA claim to determine which provision of the FCRA that Plaintiff alleges Defendant violated. Accordingly, the Court will briefly touch upon the merits, in part, of Defendant's motion.

10

### 1.      Failure to Identify a Specific FCRA Provision

Defendant argues that Plaintiff fails to identify a single provision of the FCRA that he contends Defendant violated and, instead, he provided a general statement that Defendant failed to comply with the FCRA. [Doc. 9-1 at 9-10]. Defendant argues that it is left to engage in guesswork as to upon which provisions of the FCRA Plaintiff seeks relief. [*Id*. at 10]. Defendant has identified 15 U.S.C. § 1681s-2(a), (b) as possible claims for relief. [*Id*. at 11].

It was not difficult for the Court to discern that the Amended Complaint asserts a claim against Defendant as an individual that furnishes information to the credit reporting agencies. [*See* Doc. 7 at ¶¶ 13, 15, 16, 21, 33, 67]. The only provision of the FCRA that Plaintiff could possibly seek a claim against Defendant as a furnisher of information to the credit reporting agencies is 15 U.S.C. § 1681s-2, which the Court and apparently Defendant had no trouble identifying. Thus, to the extent that Defendant seeks to dismiss Plaintiff's claim for failure to specifically allege which provision Defendant allegedly violated, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion to dismiss Plaintiff's FCRA claim.

11

AO 72A
(Rev.8/8
2)

### 2.      15 U.S.C. § 1681s-2(a)

Defendant then argues that, to the extent that Plaintiff bases his claim on § 1681s-2(a), the claim fails because there is no private right of action under that provision.   [Doc. 9-1 at 11-12 (citing *inter alia Chipka v. Bank of America*, 355 Fed. Appx. 380, 383 (11th Cir. Dec. 8, 2009); *Green v. RBS Nat'l Bank*, 288 Fed. Appx. 641, 642 (11th Cir. Aug. 4, 2008))].   Plaintiff's response does not appear to challenge Defendant's argument that there is no private right of action under § 1681s-2(a), and instead, only generally argues that he has alleged sufficient facts to support a private right of action under the FCRA.   [Doc. 14 at 10-11, *passim*].

Section 1681s-2(a) affirmatively places a duty on furnishers of information to provide accurate information and expressly prohibits furnishers from reporting information with actual knowledge of errors. 15 U.S.C. § 1681s-2(a)(1)(A).  However, courts agree that Congress "expressly reserved enforcement of subsection (a) to governmental agencies and officials, thereby limiting a consumer's private cause of action against a furnisher of credit information to violation of § 1681s-2(b)." *Chipka*, 355 Fed. Appx. at 383; *accord Steed v. Everhome Mortg. Co.*, 308 Fed. Appx. 364, 369-70 (11th Cir. Jan. 21, 2009); *Green*, 288 Fed. Appx. at 642; *Seamans v. Temple University*, 744 F.3d 853, 864 (3d Cir. 2014); *Sanders v. Mountain Am. Fed. Credit*

AO 72A
(Rev.8/8
2)

*Union*, 689 F.3d 1138, 1147 (10th Cir. 2012); *Huerta v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir. 2011) (citing 15 U.S.C. § 1681s-2(c), (d); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002)).  Accordingly, Plaintiff has no private right of action under 15 U.S.C. § 1681s-2(a).  Therefore, to the extent that Plaintiff seeks to raise a claim under 15 U.S.C. § 1681s-2(a), the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant's motion to dismiss Plaintiff's FCRA claim under that code section.

### 3.    15 U.S.C. § 1681s-2(b)

Section 1681s-2(b) imposes duties upon the furnishers of information, but these duties do not arise until after the furnisher receivers notice of the dispute from the credit reporting agency.  15 U.S.C. § 1681s-2(b)(1).  Once the furnisher has received notice of the dispute, the furnisher is then under a duty to investigate the dispute, report the results of the investigation to the credit report agency, and, if the information is found to be inaccurate, incomplete, or cannot be verified, then the furnisher must modify the item of information, delete the item of information or permanently block the reporting of that item of information.  15 U.S.C. § 1681s-2(b)(1)(A), (C), (E).  Section 1681s-2(b) also imposes a deadline of thirty days to comply with the section from the time of the consumer's dispute.  15 U.S.C. § 1681s-2(b)(2).  Therefore, a cause of action under

13

Section 1681s-2(b) occurs no earlier than thirty days from a plaintiff's dispute to the credit bureaus. *See id.*; *Sweitzer v. Am. Express Centurion Bank*, 554 F. Supp. 2d 788, 795 (S.D. Ohio 2008). However, the violation is triggered when the furnisher receives notice of the dispute. *Id.*; *Deaton v. Chevy Chase Bank*, 157 Fed. Appx. 23, 24 (9th Cir. Nov. 28, 2005); *Marcinski v. RBS Citizens Bank*, N.A., 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014). Further, an action cannot be maintain unless the plaintiff alleges that the defendant received notice of the dispute. 15 U.S.C. § 1681s-1(b). *Pinckney v. SLM Fin. Corp.*, 433 F. Supp. 2d 1316, 1319 (N.D. Ga. 2005) (Hunt, J.); *Horton v. HSBC Bank*, Civil Action File No. 1:11-CV-3210-TWT, 2013 WL 2452273, at *6-7 (N.D. Ga. June 5, 2013) (Walker, M.J., *adopted by* Thrash, J.). As there can be no violation of § 1681s-2(b) without Defendant having received a notice of dispute, the Court must now address Defendant's arguments on this point.

Defendant argues that Plaintiff fails to state a claim because there is no allegation that Defendant received a notice of dispute from a consumer reporting agency. [Doc. 9-1 at 12-13]. Defendant goes on to argue that " 'Plaintiff attempts to allege that 'Defendant had received notice of the dispute from the bureaus,' by attaching correspondence from Experian in January 2013,' " [*id.* at 13 (citing [Doc. 7-2 at 1])], but it claims that this exhibit merely provided that Experian was contacting the

14

" 'furnisher of the information or the vendor who collected the information from a public record source,' " [*id.*], but "[b]ased strictly upon the exhibits to the Amended Complaint, there is no evidence that Homeward received any notice of Plaintiff's dispute." [*Id.* (quoting [Doc. 7 at ¶ 14])]. Accordingly, Defendant argues, "any allegation by Plaintiff in this regard is completely presumptuous" and thus Plaintiff has failed to satisfy the requirements of § 1681s-2(b). [*Id.* at 13-14]. Defendant also argues that because Plaintiff admitted that all negative reporting was subsequently removed by Defendant, then Plaintiff admits that Defendant complied with the requirements of § 1681s-2(b), and thus Plaintiff's FCRA claim fails as a result of the admission. [*Id.* at 14].

In response, Plaintiff argues that he has satisfied the requirements for stating a claim under § 1681s-2(b) in that he specifically alleged that Defendant knowingly and with reckless disregard reported false information after failing to properly investigate Plaintiff's claims. He also contends that he alleged that Defendant received notice from the credit bureaus of his dispute and attached documents supporting the allegation. [Doc. 14 at 7-8]. Plaintiff argues that, at this stage of the litigation, his allegations must be taken as true and he was not required to provide actual proof of receipt of notice by Defendant. [*Id.* at 8]. To Defendant's argument that he "admits" that all negative credit

15

reporting was removed, Plaintiff argues that he repeatedly stated that even after this supposed removal, Defendant began reporting false information again.  [*Id.*].

In its reply, Defendant argues that the exhibits attached to the complaint only support an argument that the credit reporting agencies were going to contact Defendant, not that they actually did.  [Doc. 15 at 7].

The Court rejects Defendant's argument that Plaintiff failed to state a claim because Plaintiff did not attach evidence to the complaint that Defendant actually received notice of the dispute from the credit bureaus.  A District Judge of this Court rejected this very argument in *Pinckney*, a case that Defendant cites in support of its position.  433 F. Supp. 2d at 1319; [Doc. 9-1 at 13].  Just as in *Pinckney*, "Defendant is arguing the substantive merits of Plaintiff's claim, which is improper at this stage of the litigation, where the Court accepts as true all of the allegations in the Complaint in order to determine whether Plaintiff has stated a claim for relief.  Fed. R. Civ. P. 12(b)(6)."  433 F. Supp. 2d at 1319.  As Defendant recognizes, Plaintiff's Amended Complaint alleges that "Defendant had received notice of the dispute from the bureaus."  [Doc. 7 at ¶ 14; Doc. 9-1 at 13].  This is sufficient to allege that Defendant received notice and, although Plaintiff did attach exhibits, he was not required to attach actual proof.  *Pinckney*, 433 F. Supp. 2d at 1319; *see also Horton*,

16

2013 WL 2452273 at *6-7 (finding that while not specifically alleged, it could be inferred from the complaint that Defendant received notice of the dispute from the credit bureaus, but dismissing FCRA claim on other grounds).

Returning to the statute of limitations analysis, the Amended Complaint alleges that Plaintiff disputed the reported information on at least two occasions and Defendant received notice of these disputes: (1) when Defendant began reporting inaccurate information around June or July 2012, which activity then ceased after Plaintiff disputed the reporting, [Doc. 7 at ¶¶ 12-15]; and (2) "several months later" when Defendant resumed reporting the erroneous information to the credit bureaus, [*id*. at ¶¶ 16, 21, 65-67].  The Amended Complaint does not specifically allege when Plaintiff disputed the information with the credit bureaus, [*see id.*, *passim*], however, it can be inferred from the Amended Complaint that Plaintiff's first dispute occurred around June or July 2012, [*see id.* at ¶¶ 12-14], and the second dispute occurred in January 2013, [*see id. ¶¶* 19-24, 65-67; Doc. 7-2].  Thus, these separate disputes triggered separate limitations periods. *Marcinski*, 36 F. Supp. 3d at 290-91; *Maiteki v. Marten Transp. Ltd.*, 4 F. Supp. 3d 1249, 1254 (D. Colo. 2013); *Young v. LVNV Funding LLC*, No. 12 CV 1180, 2013 WL 4551722, at *3 (E.D. Mo. Aug. 28, 2013); *Larson v. Ford Credit*, No. 06-cv-1811, 2007 WL 1875989, at *4 (D. Minn. June 28,

17

2007).[3]   Accordingly, accounting for the 30-day response period by Defendant,

15 U.S.C. § 1681s-2(b)(2), the latest Plaintiff could have filed an action regarding the

first dispute would have been August 2014.  The complaint in this action was not filed

until September 2014 and even then, as Defendant points out, a claim under the FCRA

was not raised until November 2014.  [Doc. 1-1; Doc. 7].  Therefore, the undersigned

**RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion to dismiss

---

[3]      The Court is aware that there is a split of authority on this issue as some courts have found that subsequent complaints regarding the same dispute do not trigger a new limitations period.  *See Hatten v. Experian Info. Sol., Inc.*, No. 12-12236, 2013 WL 5179190, at *4 (E.D. Mich. Sept. 12, 2013); *Hancock v. Charter One Mortg.*, No. 07-15118, 2008 WL 2246042, at *2 (E.D. Mich., May 30, 2008); *Blackwell v. Capital One Bank*, No. 606 CV 066, 2008 WL 793476, at *3 (S.D. Ga. Mar. 25, 2008); *Bittick v. Experian Inf. Sol., Inc.*, 419 F. Supp. 2d 917, 919 (N.D. Tex. 2006). However, the Court is persuaded by the reasoning in *Marcinski* and *Maiteki* as they are most in line with the spirit and intent of the FCRA.  A furnisher's duties are triggered only when it receives notice of the dispute, *Deaton v. Chevy Chase Bank*, 157 Fed. Appx. 23, 24 (9th Cir. Nov. 28, 2005), and failure to comply within 30 days is a violation of the statute. 15 U.S.C. § 1681s-2(b)(2)*; see also Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 450) (5th Cir. 1988) (reversing dismissal based on statute of limitations holding that "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies").  Also, the FCRA is remedial legislation, which is to be liberally construed in favor of consumers. *See Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998) (citing cases); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (noting that "[t]hese consumer oriented objectives support a liberal construction of the FCRA, and any interpretation of this remedial statute must reflect those objectives").  A broad reading of the statutory scheme suggests that each violation is potentially remedial.

AO 72A
(Rev.8/8
2)

insofar as they pertain to any FCRA claims arising from the June/July 2012 dispute.[4]

As to the second dispute which occurred in January 2013, the latest Plaintiff could have filed an action would have been February 2015.  As Plaintiff asserted his claim in the Amended Complaint filed November 4, 2014, Plaintiff was within the statute of limitations to pursue a claim under the FCRA.  Therefore, the undersigned concludes that Plaintiff is not barred from pursuing FCRA claims arising from the January 2013 dispute.

Addressing Defendant's argument that Plaintiff "admitted" that all negative credit reporting was subsequently removed by Defendant and thus Plaintiff admitted that Defendant complied with the requirements of 15 U.S.C. § 1681s-2(b), as discussed

---

[4]      In the event that the District Judge concludes that the statute of limitations does not bar Plaintiff's FCRA claims arising from June/July 2012, the undersigned alternatively recommends that Defendant's motion to dismiss be granted as to those claims because they fail to state a claim upon which relief can be granted.  The Amended Complaint alleges that, after disputing the reported information, Defendant immediately stopped reporting the incorrect information and removed the information from Plaintiff's credit report.  [Doc. 7 at ¶¶ 14-15].  As Defendant may have been trying to argue, [Doc. 9-1 at 14], this shows that Defendant complied with the statute and no violation occurred.  *See* 15 U.S.C. § 1681s-2(b).  The Amended Complaint also provides that Plaintiff's credit score returned to at or near its prior level.  [Doc. 7 at ¶ 30].  Thus, to the extent there may have been a some residual harm after the June/July 2012, Plaintiff has not alleged any damages as a result.  Accordingly, Plaintiff's claim under the FCRA regarding the June/July 2012 dispute fails to state a claim.

AO 72A
(Rev.8/8
2)

above, § 1681s-2(b) imposes a 30-day deadline for the furnisher of information to comply.  15 U.S.C. § 1681s-2(b)(2).  The Amended Complaint alleges that after Plaintiff disputed the reported information in January 2013, Defendant breached its duty to investigate and continued to report the incorrect information to at least one credit bureau, up until August 2013,  [Doc. 7 at ¶¶ 16, 33], and as a result, Plaintiff's credit reputation had been severely damaged.  [*Id*. at ¶¶ 19-30, 68].  Therefore, the Court concludes that Plaintiff has stated a claim for relief as to the later dispute. Accordingly, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion to dismiss insofar as they pertain to any FCRA claims arising from the January 2013 dispute.

### B.    State Law Claims

#### 1.    Preemption by FCRA

##### a.    Arguments of the Parties

Defendant alleges that the crux of Plaintiff's state law claims – breach of contract, negligence, and defamation of character and defamation of credit – are identical in that they all surround Defendant's incorrect reporting of credit information with respect to the loan.  [Doc. 9-1 at 8].  Therefore, Defendant argues, Plaintiff's claims are preempted by the FCRA pursuant to 15 U.S.C. § 1681t(b)(1)(F), which

AO 72A
(Rev.8/8
2)

courts have held to preempt both statutory and common law claims related to furnishing information to a credit reporting agency.   [*Id*. at 8-9, 19 (citing *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011); *Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011); *Ross v. F.D.I.C.*, 625 F.3d 808 (4th Cir. 2010))]. Defendant also argues that Plaintiff's defamation claim is additionally preempted by 15 U.S.C. § 1681h(e); Defendant claims that it has qualified immunity from defamation unless Plaintiff can show that the information furnished by Defendant was false and that Defendant acted with malice or willful intent to injure him.  [Doc. 9-1 at 21-23]. Defendant argues that the Amended Complaint fails to allege malice and any intent to make such an allegation is negated because Plaintiff admitted that Defendant removed the negative reporting.  [*Id*. at 23].  Defendant further argues that Counts I through III and Count V (attorney's fees) must be dismissed.  [*Id*. at 9].

In response, Plaintiff argues that his state law claims are not preempted by the FCRA because the FCRA does not preempt all state law claims. [Doc. 14 at 5-7 (citing *Spencer v. Nat'l City Mortg.*, 831 F. Supp. 2d 1353 (N.D. Ga. 2011) (Batten, J.)]. Plaintiff argues that *Spencer* specifically held that the FCRA does not preempt breach of contract claims that are based upon the express agreement of the parties.  [*Id*. at 6 (citing *Spencer*, 831 F. Supp. 2d at 1364)].  Plaintiff argues that because he alleged a

21

breach of the express agreement, the FCRA does not preempt Plaintiff's breach of contract claim. [*Id*. at 7]. With regard to the defamation claim, Plaintiff argues that he has alleged sufficient facts to show that Defendant acted with malice, willful intent, or at least reckless disregard for the consequences of its actions. [*Id*. at 15].

In reply, Defendant also cites to *Spencer* in support of its argument that all of Plaintiff's state law claims are preempted under § 1681t(b)(1)(F). [Doc. 15 at 8]. It argues that *Spencer* does not apply in this case because Defendant is only the servicer of the loan and Plaintiff did not enter into a contractual agreement with it, and, thus, Defendant and Plaintiff are not parties to an express agreement. [*Id*. at 8-9]. Defendant further argues that in addition to being preempted by § 1681t(b)(1)(F), Plaintiff's negligence and defamation claims are preempted by § 1681h(e). [*Id*. at 10-12]. Defendant contends that because Plaintiff does not assert claims under 15 U.S.C. §§ 1681g, 1681h, or 1681m, Plaintiff cannot avail himself of the exception to the § 1681h(e) preemption statute. [*Id*. at 11-12]. Finally, Defendant asserts that even if Plaintiff had made those claims, those provisions do not apply to furnishers of information. [*Id*. at 12].

AO 72A
(Rev.8/8
2)

**b.**     **Reconciling 15 U.S.C. § 1681h(e) and 15 U.S.C. § 1681t(b)(1)(F)**

The FCRA preempts certain state law claims as against furnishers of information under two provisions, § 1681h(e) which was enacted in 1970, and § 1681t(b)(1)(F), which was added in 1996. *Purcell*, 659 F.3d at 625; *Ross*, 625 F.3d at 813. Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).   Section 1681t(b)(1)(F) provides that

> [n]o requirement or prohibition may be imposed under the laws of any State– with respect to any subject matter regulated under– section 1681s-2 of this title relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply – (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).

15 U.S.C. § 1681t(b)(1)(F).

23

These code sections have generated endless debate over the past decade as to whether § 1681t(b)(1)(F) conflicts with § 1681h(e), and how to resolve the perceived conflict.  *See e.g. Neal v. Equifax Credit Info. Serv., Inc.*, No. CIV A 103-CV-0761-JEC, 2004 WL 5238126, at *7 (N.D. Ga. Mar. 11, 2004) (Carnes, J.) ("These statutes overlap each other in that each provides some protection to furnishers of information. However, they also appear to contradict each other in that § 1681t[(b)(1)(F)] prohibits state causes of action against furnishers of information, while § 1681h(e) allows consumers to sue such entities for defamation, a state cause of action, if the defamatory statement was made with malice or willful intent to injure.  The former, therefore, provides furnishers of information with a blanket immunity to suit, while the latter gives them much narrower protection."); *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1373-76 (N.D. Ga. 2004) (Evans, J.) (resolving the conflict by finding that § 1681t(b)(1)(F) applies only to statutory claims and § 1681h(e) applies to common law claims, i.e. the statutory approach); *Carruthers v. Am. Honda Fin. Corp.*, 717 F. Supp. 2d 1251, 1254 (N.D. Fla. 2010) (adopting a total preemption approach wherein the court found that § 1681t(b)(1)(F) totally preempts both statutory and common law claim rendering § 1681h(e) superfluous); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 773, 785 (W.D. Ky. 2003) (applying the temporal approach, finding

24

that, in order to give effect to both statutes, § 1681t(b)(1)(F) only applies when the furnisher receives notice of the dispute).  The parties have not cited any Eleventh Circuit case which would settle the issue in this circuit nor has the Court found any Eleventh Circuit cases that settle the scope of the preemption between the two provisions.  *Cf. Lofton-Taylor v. Verizon Wireless*, 262 Fed. Appx. 999, 1001-03 (11th Cir. Jan. 23, 2008) (declining to discuss whether plaintiff's defamation and invasion of privacy claims were preempted by § 1681t(b)(1)(F) after having found that the claims were preempted under § 1681h(e), as there was no evidence that the information was false and no evidence that the communication was done with malice or willful intent to injure the consumer).

A majority of the decisions in this district have found that, in order to give meaning to both statutes, and not render § 1681h(e) superfluous, § 1681t(b)(1)(F) only applies to claims arising from state statutes and § 1681h(e) pertains to common law claims, i.e. "the statutory approach."  *See e.g. Pinckney*, 433 F. Supp. 2d at 1320-22; *Johnson*, 351 F. Supp. 2d at 1373-76; *Neal*, 2004 WL 5238126 at *7; *see also Russell-Allgood v. Resurgent Capital Serv*, L.P., 515 F. Supp. 2d 1307, 1312 (N.D. Ga. 2007) (Forrester, J.), *judgment vacated* (June 26, 2007).  However, *Spencer*, cited by both parties, is a more recent case that took the approach of circuit courts of appeal that

25

addressed this issue.  *See Spencer*, 831 F. Supp. 2d at 1361-63.  Other circuit courts

have concluded that § 1681t(b)(1)(F) preempts both state statutory and common laws

and does not conflict at all with § 1681h(e).  *Purcell*, 659 F.3d at 624-25; *Macpherson*,

665 F.3d at 47-48; *see Ross*, 625 F.3d at 813-16 (finding that § 1681t(b)(1)(F) applies

to preempt plaintiff's state law claim against the furnisher and the claim does not fall

under the scope of § 1681h(e)); *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103,

106 (2d Cir. 2009) (finding that § 1681t(b)(1)(F) preempts both statutory and common

law claims).  Their reasoning is from a plurality decision of the Supreme Court, which

held that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests

no distinction between positive enactments and common law; to the contrary, those

words easily encompass obligations that take the form of common-law rules." *Spencer*,

831 F. Supp. 2d at 1363 (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521

(1992)); *accord Premium*, 583 F.3d at 106; *see also Purcell*, 659 F.3d at 624 (finding

that "a reference to state 'laws' comprises all sources of legal rules, including judicial

opinions") (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

These courts also do not find any conflict between the two provisions.  *Purcell*,

659 F.3d at 625; *Macpherson*, 665 F.3d at 47-48; *Spencer*, 831 F. Supp. 2d at 1361-63

(citing *Ross*, 625 F.3d at 814).  These courts find that while "[§] 1681h(e) preempts

26

AO 72A
(Rev.8/8
2)

some state claims that could arise out of reports to credit agencies, § 1681t(b)(1)(F) preempts more of these claims. *Purcell*, 659 F.3d at 625; *Macpherson*, 665 F.3d at 47-48. Judge Easterbrook best described the non-conflict between the provisions:

> Our point is not that § 1681t(b)(1)(F) repeals § 1681h(e) by implication. It is that the statutes are compatible: the first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more. There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting a speed limit of 55. It is easy to comply with both: don't drive more than 55 miles per hour. Just as the later statute lowers the speed limit without repealing the first (which means that if the second statute should be repealed, the speed limit would rise to 60 rather than vanishing), so § 1681t(b)(1)F) reduces the scope of state regulation without repealing any other law. This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F). When it drops out, § 1681h(e) remains. But even if our understanding creates some surplusage, courts must do what is essential if the more recent enactment is to operate as designed.

*Purcell*, 659 F.3d at 625.

Just as the *Spencer* court, the undersigned concludes that this approach is the most sound. *Spencer*, 831 F. Supp. 2d at 1362-63. As noted by Judge Batten, the approach espoused by the other judges in this district were taken prior to any ruling from an appellate court and thus did not enjoy the benefit of their guidance. *Id.* at 1362. Viewing § 1681t(b)(1)(F) as encompassing both state statutory and common law

27

claims, the Court now addresses whether any or all of Plaintiff's state law claims are preempted by the FCRA.

### c.      Breach of Contract

The Court begins its analysis with Plaintiff's breach of contract claim.  Despite Defendant's assertion that the crux of the allegations supporting Plaintiff's claims is the incorrect credit reporting, [Doc. 9-1 at 8], that is not the crux of Plaintiff's breach of contract claim.  [Doc. 7 at ¶¶ 38-47].  Plaintiff's breach of contract claim alleges that under the terms of the contract, Defendant had an obligation to post payments in accordance with the terms of the contract and an obligation to not apply unwarranted late charges, forced placed insurance charges or other miscellaneous charges to Plaintiff's account.  [*Id*. at ¶ 41].  Plaintiff further alleges that Defendant breached its contractual obligations by misapplying Plaintiff's timely April 2012 payment, erroneously charging Plaintiff for "forced placed" hazard insurance, and erroneously applied late charges and other miscellaneous fees.  [*Id*. at ¶ 42].  Nowhere in Plaintiff's claim for breach of contract does Plaintiff assert that Defendant reported incorrect information to the credit agencies.  [*See id.* at ¶¶ 38-47].

28

Thus, Plaintiff's claims purely arise from Defendant's contractual obligations and do not assert any claims that could potentially fall under the purview of the FCRA.[5] In other words, Plaintiff's breach of contract claim does not relate to the "subject matter regulated under section 1681s-2." *See* 15 U.S.C. § 1681t(b)(1)(F).

Therefore, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion to dismiss Plaintiff's breach of contract claim (Count I) on

_____

[5]      The Court concludes that Plaintiff's allegation that, as part of his non-exhaustive list of damages, Plaintiff suffered the loss and severe reduction in his credit lines is not fatal to his claim.  Other courts have found a breach of contract claim is not preempted even with an allegation of damages resulting from false reporting to the credit bureaus.  *See Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1152 (C.D. Cal. 2012) (citing *Spencer*, 831 F. Supp. 2d at 1356, 1364); *Desser v. United States*, No. CV 13-09190 DDP (CWx); 2014 WL 4258344, at *6 n.3 (C.D. Cal. Aug. 27, 2014) (same).

29

the basis that it is preempted by the FCRA.[6]  The Court will address the merits of the

_____

[6]     Even assuming that Plaintiff's breach of contract claim stems from the allegation that Defendant falsely reported information to the credit bureaus, [*see e.g.* Doc. 7 at ¶ 47 (including as part of his non-exhaustive list of damages the loss and severe reduction in his credit lines)], the FCRA does not preempt breach of express terms of a contract or agreement.  *See Spencer*, 831 F. Supp. 2d at 1363-64; *see also Carruthers*, 717 F. Supp. 2d at 1254 (finding that breach of contract claims are ordinarily not preempted, however, the court found this claim was preempted because the allegation supporting the breach of contract claim was that defendant violated the *implied* covenant of good faith and fair dealing under Florida law); *c.f. Granville Alley v. Farmers Bank, Inc.*, No. 3:13-CV-146 (CAR), 2014 WL 4287103, at *8 (M.D. Ga. Aug. 29, 2014) (finding that plaintiff's breach of contract claim is preempted by FCRA as plaintiff only alleged breach of implied terms under the note and mortgage to continue to accurately and completely report to credit reporting agencies). Section 1681t(b) states that "no requirement or prohibition may be imposed under the laws of any State."  15 U.S.C. § 1681t(b) (emphasis added).  However, " 'a common law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement  .  .  .  *imposed under State law*.' "  *Spencer*, 831 F. Supp. 2d at 1363-64 (quoting *Spain*, 363 F.3d at 1198 (emphasis in original) (internal punctuations and quotations omitted).  As noted in *Spencer*, the Eleventh Circuit handled a similar issue and, although it involved a different federal statute and a breach of an express warranty, the principles are analogous and persuasive.  *Id.*; *see also Carruthers*, 717 F. Supp. 2d at 1254.  Although some courts outside this circuit find that § 1681t(b)(1)(F) preempts even as to express agreements, *see Spencer*, 831 F. Supp. 2d at 1364 (citing cases), "this Court believes that the Eleventh Circuit would likely disagree with those courts." *Id.*; *c.f. Papas v. Upjohn Co.*, 985 F.2d 516, 519-20 (11th Cir. 1993) ("Although liability for breach of an *express* warranty may be viewed as imposed by the warrantor, liability for breach of an *implied* warranty is based on the agreement, imposed by law . . . . If [the defendant] were to have liability for an *implied* warranty of merchantability, that liability would not be self-inflicted.  Instead, that liability would be based on a requirement imposed by state law.") (internal citations, quotations and punctuations omitted) (emphasis in original).  Thus, if the District Judge disagrees with the above analysis and finds that Plaintiff's breach of contract claim centers around the false reporting to the credit agencies, then the

30

breach of contract claim below.

### d.  Negligence

In Count II of the Amended Complaint, Plaintiff alleges that Defendant was obligated to exercise a standard of care in Plaintiff's benefit in two situations: (1) Defendant had a duty to apply Plaintiff's payments in accordance with Georgia law, pursuant to O.C.G.A. § 7-4-17, and that Defendant breached this duty by failing to properly apply Plaintiff's payments, [Doc. 7 at ¶¶ 49, 50]; and (2) Defendant had a duty to exercise the standard of care and skill ordinarily used by loan servicers, and Defendant breached this duty by negligently reporting false information to the credit reporting agencies.  [*See id.* at ¶ 51].

To the extent that Plaintiff's negligence action pertains to the breach of O.C.G.A. § 7-4-17 for failure to properly apply the payments, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion to dismiss Plaintiff's negligence claim, as this claim does not pertain to any action that could potentially fall under the purview of the FCRA.  To the extent that Plaintiff alleges a

_____

undersigned alternatively **RECOMMENDS** that, to the extent that the District Judge finds an implied duty under the contract to correctly report information, then Defendant's motion to dismiss Plaintiff's breach of contract claim should be **GRANTED**.

31

negligence action pertaining to Defendant's conduct in falsely reporting information to credit reporting agencies, the Court finds that Plaintiff's negligence claim is specifically preempted under § 1681t(b)(1)(F), as this state common law duty specifically "relate[s] to the responsibilities of persons who furnish information to consumer reporting agencies." No exception applies to consider whether this claim would survive preemption under § 1681h(e).[7] Therefore, to the extent that Plaintiff alleges a negligence action pertaining to Defendant's conduct in falsely reporting information to credit reporting agencies, the undersigned **RECOMMENDS** to the

---

[7]     Even if Plaintiff's negligence claims fell under the exception clause of § 1681h(e), i.e, "except as to false information furnished with malice or willful intent to injure such consumer," the Court must first determine whether § 1681(h)(e) even applies. Section 1681h(e) only applies to defamation, invasion of privacy, or negligence claims with respect to the reporting of information "*based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report.*" § 1681h(e) (emphasis added). Sections 1681g and 1681h apply only to credit reporting agencies and § 1681h applies only to users of consumer reports. *See Ross*, 625 F.3d at 814. Defendant is neither a credit reporting agency nor a user of consumer reports vis-à-vis Plaintiff, nor does Plaintiff allege that Defendant took adverse action based on the report. *See id.*; *Spencer*, 831 F. Supp. 2d at 1362. Therefore, the preemption provision under § 1681h(e) does not apply and all that is left is to look to § 1681t(b)(1)(F). *See id.*; *Pinckney*, 433 F. Supp. 2d at 1321-22 (using the reasoning discussed above, the court found that § 1681h(e) does not preempt plaintiff's state law tort claims); *Johnson*, 351 F. Supp. 2d at 1377 (same, concluding that "the necessity of malice or willful intent is obviated" and as such, "§ 1681h(e) does not preclude plaintiff's defamation claim.").

AO 72A
(Rev.8/8
2)

District Judge that he **GRANT** Defendant's motion to dismiss Plaintiff's negligence claim.[8]

### e.      Defamation of Character and Defamation of Credit

The entirety of Plaintiff's defamation claims specifically relates to Defendant's responsibilities as a furnisher of information to consumer reporting agencies. [*See* Doc. 7 at ¶¶ 57-62].  Thus, these claims are preempted by the FCRA pursuant to § 1681t(b)(1)(F), without exception to consider whether these claims would survive preemption under § 1681h(e).[9]  Therefore, the undersigned **RECOMMENDS** to the

---

[8]      Plaintiff did not directly respond to Defendant's argument that this second negligence claim is preempted under the FCRA.  [*See* Doc. 9-1 at 19; Doc. 14 at 13-14]. Besides generally arguing that his claims are not preempted by the FCRA, [*see* Doc. 14 at 5-6], Plaintiff only makes an argument for negligence as it relates to the payments, not the negligence claim pertaining to the false reporting of information. [Doc. 14 at 13-14].

"[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."  *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (Evans, J.); *see also* ND. Ga. R. 7.1B. Also, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."  *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (Carnes, J.).  Therefore, to the extent that Plaintiff fails to respond to Defendant's arguments, the Court deems Plaintiff's arguments to be abandoned.

[9]      Even if this Court were to consider if Plaintiff's defamation claims fell under the exception clause of § 1681h(e), as explained in n.7, *supra*, the Court concludes that § 1681h(e) does not apply to these claims and the Court can only

District Judge that he **GRANT** Defendant's motion to dismiss Plaintiff's defamation

claims (Count III) in their entirety.

### f.    Attorney's Fees

Because the Court finds that at least one state law claim is not preempted by the

FCRA, the Court finds that Plaintiff's state law claims for attorney's fees are not

subject to preemption under the FCRA.  Therefore, the undersigned **RECOMMENDS**

to the District Judge that he **DENY** Defendant's motion to dismiss Plaintiff's claims for

attorney's fees (Count V) on the basis that it is preempted by the FCRA.

### 2.    Merits

### a.    Breach of Contract

Defendant argues that Plaintiff has failed to identify the "contract" or provision

of that contract that was breached by Defendant and has failed to attach a copy of any

contract between the parties.  [Doc. 9-1 at 15].  Defendant argues that Plaintiff's

conclusory references to a "contract," (citing [Doc. 7 ¶ 42]) fail to state a claim for

relief.    [*Id*.   at   16   (citing   *Jenkins   v.   BAC   Home   Loan   Servicing,   LP*,

822 F. Supp. 2d 1369, 1379-80 (M.D. Ga. 2011))].

---

consider § 1681t(b)(1)(F).

34

Plaintiff argues that, as alleged in the Amended Complaint, Defendant has acquired the right, title and interest by assignment in the enforcement of Plaintiff's residential real estate contract, including the right to assess late fees and force the purchase of hazard insurance pursuant to the terms of the contract. [Doc. 14 at 12 (citing [Doc. 7 at ¶¶ 39-41])]. Plaintiff further argues that he has identified the contract as the residential loan agreement; identified the terms that were breached which were the terms relating to the application of payments, allowing late fees, and allowing forced purchase of hazard insurance; and identified the party who breached the contract, i.e. Defendant as the assignee of the lender. [*Id*.]. Plaintiff argues that *Jenkins* is distinguishable because, in that case, the plaintiff made sweeping statements rather than alleging particular facts, which Plaintiff does here. [*Id*. at 13].

Defendant did not respond to this argument in its reply brief, instead focusing on how Plaintiff's breach of contract claim is preempted by the FCRA. [*See* Doc. 15 at 8-9, *passim*].[10]

---

[10]     In the context of whether the FCRA preempts Plaintiff's breach of contract claim, which the Court found that it does not, Defendant argues that Defendant is merely the servicer of the loan and thus has no contractual obligations to Plaintiff. [Doc. 15 at 9]. To the extent that this argument was meant to apply to the merits of the breach of contract claim, the Court cannot consider this argument. First, the Court does not consider arguments raised for the first time by the movant in its reply. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352 n.11

AO 72A
(Rev.8/8
2)

The Court finds that the *Jenkins* case is persuasive here.  In *Jenkins*, the court found as follows:

> Here, [p]laintiff alleges that his breach of contract claim relates to the "repeated, unlawful and intentional misapplication of payments, the charging of unauthorized fees, . . . improperly using, applying, misapplying, and converting [p]laintiff's escrow funds, and the imposition of the above described 'forceplaced' insurance."  The allegations are insufficient to properly state a claim for breach of contract.  A plaintiff must provide more than conclusory grounds for relief.  In this case,

---

(11th Cir. 2009) (treating argument as waived where it was raised for the first time in a reply brief); *accord Wattleton v. Beeler*, 186 Fed. Appx. 852, 853 n.2 (11th Cir. June 14, 2006) (granting leave to file reply brief out of time, but declining to address any new arguments raised for first time in reply brief); *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (declining to consider argument raised for first time in reply brief); *see also Kelley v. Washington Mut. Finance Inc.*, Civil Action No. 1:11-CV-2497-RWS, 2013 WL 5530351, at *4 (N.D. Ga. Oct. 4, 2013) ("The *res judicata* argument was not raised in Chase's original brief.  Therefore, the court will not consider the argument in its analysis of the [summary judgment] motion."); *Mack v. The Housing Auth. for the City of Athens, Ga.*, No. 3:09-CV-62 (CDL), 2010 WL 797211, *3 n.2 (M.D. Ga. Mar. 3, 2010) ("Arguments made for the first time in a reply brief are not properly before the Court and should not be considered by the Court") (citing *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)).  Not considering this argument raised for the first time in reply is a matter of fairness–Plaintiff does not get a chance to respond to the arguments first raised by Defendant in the reply brief.  *See CarePartners, LLC v. Lashway*, 545 F.3d 867, 879 n.8 (9th Cir. 2008) (affirming district court's refusal to consider argument first raised in reply brief because nonmovant was unable to respond to the argument).

Second, even if this Court considered that argument, the Amended Complaint alleges that Defendant assumed the rights and obligations under the residential loan agreement and that the parties are in privity of contract.  [*See* Doc. 7 at ¶¶ 6, 39, 40].  As noted above in the text, the Court must accept these facts as true.

36

> [p]laintiff makes sweeping allegations with no factual information to support his claims. Plaintiff does not indicate which specific contract has been breached, nor does he provide evidence of the resultant damages. Therefore, as a result of his failure to sufficiently plead the prima facie elements of his claim, [plaintiff's breach of contract claim] is dismissed.

822 F. Supp. 2d at 1379-80. Although Plaintiff's allegations here are not entirely "sweeping" as Plaintiff has provided factual information surrounding the very same allegations, [*see* Doc. 7 at ¶¶ 9, 10, 34-36], what is fatal to Plaintiff's breach of contract claim is the failure to indicate a specific provision of a specific contract. *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1368-69 (N.D. Ga. 2006) (Thrash, J.) (citing *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005) (breach of contract claim failed because plaintiffs could not identify any contractual provision breached by defendant); *Burgess v. Religious Tech. Ctr., Inc.*, 600 Fed. Appx. 657, 664 (11th Cir. Jan. 26, 2015); *Anderson v. Deutsche Bank Nat. Trust Co.*, Civil Action No. 1:11-cv-4091-TWT-ECS, 2012 WL 3756512, at * 5 (N.D. Ga. Aug. 6, 2012) (Scofield, M.J.) ("R&R"), *adopted by* 2012 WL 3756435 (N.D. Ga. Aug. 27, 2012) (Thrash, J.).

The Court notes that in support of his argument that the FCRA does not preempt his breach of contract claim, Plaintiff states that "Paragraphs 1 through 3 of the Uniform Covenants section of the security agreement (Exhibit A to Defendant's Motion

37

[[Doc. 9-2 at 5]]) specifically addresses the application of payments and Defendant's rights to impose fees.  Paragraph 2 specifically states that "payments accepted and applied by [Defendant] shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3." [Doc. 14 at 6-7].  However, in ruling on a motion to dismiss, the Court must limit "review to the four corners of the complaint."  *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (stating "[a] court's review on a motion to dismiss is 'limited to the four corners of the complaint.' ") (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  A party cannot amend a complaint by attaching documents to a response to a motion to dismiss, or by asserting new facts or theories in the response. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citation omitted); *Long v. Satz*, 181 F.3d 1275, 1278-79 (11th Cir. 1999)); *Brown v. J.P. Turner & Co.*, No. 1:09-CV-2649-JEC, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) (Carnes, J.) (noting that it is "plainly inappropriate" to raise allegations for the first time in response to a motion to dismiss) (citations omitted); *Bruhl v. PriceWaterhouseCoopers Int'l*, No. 03-23044, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) (noting that a plaintiff may not supplant allegations made in

38

their complaint with new allegations raised in a response to a motion to dismiss); *accord Walker v. City of Orlando*, No. 07-651, 2007 WL 1839431, at *5 (M.D. Fla. June 26, 2007) (limiting consideration to the allegations contained in the complaint, even when new allegations were raised in response to a motion to dismiss).

Moreover, a plaintiff's *post hoc* allegation does not suffice to defeat a motion to dismiss.  *See Central Transp., LLC v. Atlas Towing, Inc*, 884 F. Supp. 2d 207, 218 (E.D. Pa. 2012) ("We cannot consider these *post hoc* allegations in ruling on defendants' motion to dismiss" where allegations missing from complaint.); *see also Am. Petroleum Inst. v. Technomedia Intern.., Inc.*, 699 F. Supp. 2d 258, 265 (D.D.C. 2010) (rejecting "*post hoc* attempt to remedy a deficiency in the pleading" and noting that "[n]otwithstanding the wide latitude given to litigants at the pleading stage, a pleading is not to be used as a constantly moving target that the pleader can reformulate every time the pleading is challenged.  Sooner or later, it 'must stand or fall on its own.' ") (internal citations omitted; punctuation altered).  As Plaintiff's Amended Complaint does not assert specific provisions under a specified contract, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's

AO 72A
(Rev.8/8
2)

motion to dismiss Plaintiff's breach of contract claim, (Count I) and that Plaintiff's breach of contract claim be dismissed with prejudice.[11]

### b.   Negligence

Defendant alleges that any duty upon Defendant to properly apply payments or take any other action with regard to the loan arises out of the terms of the contract and that in order to allege a viable negligence claim, Plaintiff must breach a duty that is independent of the terms of the alleged contract.  [Doc. 9-1 at 17].  Defendant argues that Plaintiff's breach of contract and negligence claims are predicated upon the same factual allegations that Defendant misapplied payments and, therefore, any duty arises out of the alleged contractual relationship.  [*Id*. at 18].  Defendant further argues that this Court has repeatedly recognized that " 'Georgia law does not recognize a claim for negligent mortgage servicing.' "  [*Id*. at 19 (citing *Bilal v. Wells Fargo Bank, N.A.*, Civil Action File No. 1:12-CV-3708-TWT, 2014 WL 814228, at *3 (N.D. Ga. Jan. 14, 2014) (Thrash, J.); *Mukendi v. Wells Fargo, N.A.*, Civil Action No. 1:13-CV-1436-RWS, 2014 WL 359947, at *5 (N.D. Ga. Feb. 3, 2014) (Story, J.)].  Moreover,

---

[11]    *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (holding the district court "is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

AO 72A
(Rev.8/8
2)

Defendant argues that any negligence claim is barred by the economic loss rule.  [*Id.* (citing *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 279 Ga. 77, 78[, 608 S.E.2d 636, 637] (2005)].

Plaintiff responds that, as stated in the Amended Complaint, Defendant's duty arises by statute pursuant to O.C.G.A. § 7-4-17, thus citing a basis for his negligence claim independent of the breach of contract claim.  [Doc. 14 at 13-14].

In reply, Defendant argues that Plaintiff failed to address Defendant's argument that Georgia does not recognize a cause of action for negligent servicing and thus should be deemed unopposed.  [Doc. 15 at 12-13].

The Court declines to deem Plaintiff's failure to address "negligent servicing" as unopposed.  Just as Plaintiff did not directly address this argument, Defendant did not address Plaintiff's argument that Defendant's duty arises pursuant to O.C.G.A. § 7-4-17.  The parties do not provide any argument or cite to any case law demonstrating that one controls over the other.  The cases addressing negligent mortgaging do not address the statutory duty to apply payments under § 7-4-17.  *See e.g. Bilal*, 2014 WL 814228 at *3; *Anderson*, 2012 WL 3756512 at *9; *Mukendi*, 2014 WL 359947 at *5.  Nor do the cases involving § 7-4-17 discuss a plaintiff's right to pursue a negligence action pursuant to this statute, although they do recognize a

41

cause of action for violation of the statute.  *See e.g. Hand v. ABN AMRO Mortg. Group, Inc.*, No. CV 112-176,  2013 WL 6383128, at *12 (S.D. Ga. Dec. 5, 2013).

However, the Court finds the decisions of *Doty Comm., Inc. v. L.M. Berry & Co.*, 417 F. Supp. 2d 1355 (N.D. Ga. 2006) (Pannell, J.), and *Anderson* to be instructive.  As the parties each summarized in their briefs, "[a] defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather a defendant's breach of contract may give rise to a tort cause of action only if the defendant also breached an independent duty created by statute or common law." *Doty*, 417 F. Supp. 2d at 1358 (quoting *Wallace v. State Farm Fire & Cas. Co.*, 247 Ga. App. 95, 98, 539 S.E.2d 509, 512 (2000)).  Similarly *Anderson* recognizes that "in the absence of any special duty due and owing by [d]efendants to [p]laintiff, other than any duties arising out of a contract, there would not be a basis for a claim of negligence."  2012 WL 3756512 at *9.  Here, Plaintiff has identified a statute giving rise to an independent duty.  Thus, it would appear that Plaintiff has validly stated a negligence claim.

The economic loss rule similarly does not apply.  O.C.G.A. § 51-1-11(a) provides that "if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in

42

privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract . . . ." This so-called "economic loss rule" "generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *Gen. Elec. Co.*, 279 Ga. at 78, 608 S.E.2d at 637. "Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property[.]" *Id.* However, "where 'an independent duty exists under the law, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Hanover Ins. Co. v. Hermosa Const. Grp. LLC*, Civil Action No. 1:13-cv-2933-ODE, 2014 WL 5486602, at *5 (N.D. Ga. May 1, 2014) (Evans, J.) (quoting *Rosen v. Protective Life Ins. Co.*, No. 1:09-CV-3620, 2010 WL 2014657, at *9 (N.D. Ga. May 20, 2010) (Duffey, J.). Judge Evans explained that "[t]his principle has been applied in cases where the plaintiff *identified a statutory . . . duty* that would have existed absent the underlying contract." *Id.* (emphasis added).

 Here, Plaintiff has done just that in identifying a duty for Defendant to perform under O.C.G.A. § 7-4-17, which exists absent an underlying contract. *See Waldrip v. Voyles*, 201 Ga. App. 592, 594, 411 S.E. 2d 765, 768 (1991) (since the creditor's

43

obligation "arises from [a specific statute], not from a contract provision, it follows that this duty of the creditor is a duty imposed by law and not merely a duty imposed by the contract itself.") (internal quotations, citations, and punctuations omitted); *accord 4WD Parts Ctr., Inc. v. Mackendrick*, 260 Ga. App. 340, 343-44, 579 S.E.2d 772, 777 (2003) (finding that trial court did not err in awarding damages additional to that of breach of contract where plaintiff had identified a statutory duty); *Blackburn v. BAC Home Loans Serv., LP*, 914 F. Supp. 2d 1316, 1325 (M.D. Ga. 2012) (denying defendant's summary judgment motion as to plaintiff's trespass claim where, even though a contract existed, plaintiff identified an independent duty that arose from case law which was also codified by statute).

Therefore, the undersigned **RECOMMENDS** to the District Judge that he **DENY** Defendant's motion to dismiss Plaintiff's negligence claim relating to misapplication of the payments.

## IV.   Conclusion

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's motion to dismiss, [Doc. 9], be **GRANTED in part and DENIED in part**. Specifically, the undersigned **RECOMMENDS** that Defendant's motion to

44

AO 72A
(Rev.8/8
2)

dismiss Counts I and III be **GRANTED** and Defendant's motion to dismiss Counts II,

IV and V be **DENIED**.

      **IT IS SO RECOMMENDED**, this 5th day of August, 2015.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)